GOOCH et al., Respondents, v. J. I. CASE THRESHING MACHINE COMPANY, Appellant.

St. Louis Court of Appeals, May 8, 1906.

1. **AGENCY: Commission: Contract of Agency.** A provision in a contract between a threshing machine company and its agents, that the latter should receive no commission for selling second hand machinery, contemplated second-hand machinery taken in by them and exchanged for goods they sold, and did not prevent their recovery of a commission for the sale of a second-hand machine taken in in another district and sold by them at the request of the company.

2. ——: ——: **Contract of Sale.** Where the agents of a threshing machine company made the sale of a machine but the sale was rejected by the company which immediately made a new contract of sale with the same parties, without a substantial variance in the terms of the contract, for the purpose of cutting the agents out of their commission, they were entitled to their commissions on the sale.

Appeal from Pike Circuit Court.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*Tapley & Fitzgerrell* for appellant.

*Pearson & Pearson* for respondents.

GOODE, J.—Plaintiffs sued for a commission alleged to be due them for selling a second-hand threshing machine taken by the defendant in part payment for a

new machine. G. H. Ackley, a traveling salesman for the
defendant company had an opportunity to sell a thresh-
ing machine to a man who lived at Warrenton, in War-
ren county. The defendant's local agents at Warrenton,
were a firm styled Walker & Hintz. Plaintiffs are the
local agents at Eolia, in Pike county. Walker & Hintz
found this customer at Warrenton and Ackley took hold
of the negotiation with him. The conditions on which
the customer would buy was that defendant would ac-
cept an old thresher in part payment. The old machine
was to be taken at the price of $750. Ackley went to
Eolia where plaintiffs were in business, informed them
of the opportunity to sell a machine at Warrenton, said
the sale could be made if a buyer could be found for the
old machine, and requested plaintiffs to help him find a
buyer. Plaintiffs asked what there would be in it for
them if they found a buyer. Ackley told them the com-
pany wanted to realize $750 for the second-hand machine
and if plaintiffs could sell it for $850 they could have the
surplus hundred dollars for their commission. Plain-
tiffs said they could sell it for $900 as easily as for $850.
The old machine was sold to Bibb & Son, near Eolia,
for $900. This sale was accomplished with the assist-
ance of plaintiffs who introduced Ackley to the buyers.
Bibb & Son were to give two notes of $450 each, one due
October 1, 1904, and the other due October 1, 1905, to be
secured by a chattel mortgage. The transaction was
subject to the approval of the defendant company.
About a week later Ackley visited plaintiffs again and
told them the agents at Warrenton had sold the new ma-
chine for $1,300 instead of $1,400, which was the price,
and therefore there would be no commission paid to
plaintiffs for the sale of the old machine. At this inter-
view Ackley produced a letter from defendant addressed
to plaintiffs in which it was stated that defendant's
agents at Warrenton had taken an order for the new ma-
chine at $1,300 instead of $1,400, which the company

expected to receive, and hence the company would find difficulty in handling the old machine if they had to pay a commission on the sale of it. The letter further stated that Ackley would try to make an arrangement with plaintiffs. The arrangement Ackley endeavored to make was to induce plaintiffs to guarantee the notes given by Bibb & Son for the old machine, offering, if plaintiffs would indorse the notes, to pay them a commission of $200. Plaintiffs refused to guarantee the notes; whereupon Ackley said he would re-write the order for the sale of the old machine to Bibb & Son. Ackley asserted that the company had rejected the sale to Bibb & Son which had been made through the intervention of plaintiffs, and therefore, plaintiffs were not entitled to a commission. Plaintiffs insisted they were and would demand it if the machine was sold to Bibb & Son. Ackley subsequently re-wrote the terms of the sale, making the first note payable September 1, 1904, instead of October 1st, and dividing the second note of $450 into two notes of $225 each, one due Octtober 1, 1905, and the other due October 10th. These notes were secured by a chattel mortgage, as the others were to be. There was no substantial change in the terms of the sale, and Bibb & Son, whom plaintiffs had interested in the old machine, purchased it. There was testimony going to show that after the negotiation of the sale to Bibb & Son had been set on foot, Ackley induced the plaintiffs to accept $65 for their commission by representing to them that a commission would have to be paid to the agents at Warrenton. For this reason the verdict and judgment were for $65 instead of $100.

1. It is contended by the company that plaintiffs were not entitled to a commission on the sale of the old machine, because the written contract between them and defendant company contained a stipulation providing that plaintiffs, as the company's agents at Eolia, should receive no commission on second-hand goods of any kind.

That stipulation had reference to second-hand machines taken in part payment for new machines sold by plaintiffs in the territory in which they were agents; in their territory around Eolia. The second-hand machine plaintiffs sold to Bibb & Son was taken in part payment for a new machine sold, not in plaintiffs'. territory, or by them, but in Warren county and by other agents of defendant. Ackley engaged the assistance of plaintiffs to find a customer in their territory for an old machine for the purpose of enabling a sale to be made in another county. This transaction was outside the scope of plaintiffs' employment as regular agents of defendant and not controlled by the written contract.

2. It is insisted that Ackley had no authority to employ plaintiffs to sell the second-hand machine and, in support of this contention, the contract of agency between plaintiffs and defendant is again invoked. One clause of that document provided, in effect, that no contract for the sale of a machine should be valid until approved by the company, and another clause provided that no person had any authority to waive, alter or enlarge the terms of the instrument. This stipulation has no bearing on the immediate transaction. Ackley had direct authority from the company to arrange with plaintiffs about the sale of the old machine. This fact distinctly appears from the company's letter addressed to plaintiffs, and from the further fact that after defendant knew of the sale by plaintiffs' efforts to Bibb & Son, it chose to abide by the transaction. However the question of Ackley's authority to employ plaintiffs was submitted to the jury by an appropriate instruction; and it cannot be contended seriously that the evidence was insufficient to warrant the submission.

3. The further contention is made that the sale to Bibb & Son was not plaintiffs' work, because the contract of sale concluded by plaintiffs was rejected by the company and a new contract entered into afterwards

between Ackley and Bibb & Son. Suffice to say as to this point that the court left it to the jury to determine whether or not the company accepted the sale made by plaintiffs, with the direction that, if the jury found it did not a verdict should be returned in defendant's favor. Certainly this was as much as defendant had the right to ask; for the contract for the purchase of the old machine which plaintiffs had been instrumental in inducing Bibb & Son to make, was only nominally changed by Ackley and changed for no other purpose than to cut plaintiffs out of a commission.

The verdict in this case was for the right party and the case was tried without error. Therefore the judgment will be affirmed. All concur.